## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SHEILA M. RUBLE, | ) | |
| | ) | |
| Plaintiff, | ) | 4:04CV3293 |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE FARM LIFE INSURANCE CO., | ) | MEMORANDUM |
| | ) | and |
| Defendant. | ) | ORDER |
| | ) | |
| JEFFREY PAUL RUBLE and | ) | |
| TIMOTHY KYLE RUBLE, | ) | |
| | ) | |
| Intervenors. | ) | |

This is an action to determine the rightful beneficiary to certain life insurance proceeds and whether the insurance carrier used reasonable care in processing the beneficiary information. The court has jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000. Pursuant to 28 U.S.C. § 636 and the consent of the parties,[1] the matter was tried to the undersigned magistrate judge on December 5, 2005, whereupon the case was deemed submitted for decision.

### BACKGROUND

On December 4, 2003, Wayne Kirtley Ruble (Kirt Ruble) was killed in an automobile accident. The plaintiff, Sheila Ruble, was Kirt Ruble's wife at the time of his death. On the date of his death, Kirt Ruble had a life insurance policy issued by State Farm Insurance Company (State Farm). Sheila Ruble alleges that since January 4, 1995, she was the insurance policy's primary beneficiary. The intervenors, Jeffrey Ruble and Timothy Ruble, allege that on February 14, 1995, Kirt Ruble applied for a $100,000 Accidental Death Benefit Rider (the Rider) as an addition to the $100,000 basic life insurance policy and

---

[1]On November 10, 2004, United States District Judge Richard G. Kopf transferred this matter to the undersigned magistrate judge. **See** Filing No. 17.

changed the policy to reflect that they, Kirt Ruble's sons, were primary and successor beneficiaries. Sheila Ruble, Jeffrey Ruble and Timothy Ruble each filed claims for breach of contract against State Farm to determine the rightful beneficiary. Additionally, Sheila Ruble alleges if the court determines she is not the rightful beneficiary of the Rider, she should be adjudged the rightful beneficiary of the initial policy. Alternatively, Sheila Ruble contends that, in the event the court determines she is not the rightful beneficiary to any of the life insurance proceeds, State Farm negligently handled an allegedly mistaken change of beneficiary form by failing to notify the insured about the beneficiary designation. State Farm denies it engaged in any negligent conduct and further asserts Sheila Ruble's claim for negligence must fail as a matter of law. State Farm deposited the proceeds from Kirt Ruble's life insurance policy, with interest, in the amount of $206,338.60 into the registry of the court for the benefit of the other parties. **See** 28 U.S.C. § 1335.

Before trial Sheila Ruble filed a trial brief (Filing No. 36) and proposed findings of fact and conclusions of law (Filing No. 37). State Farm filed a trial brief (Filing No. 40) and proposed findings of fact and conclusions of law (Filing No. 39). Jeffrey Ruble and Timothy Ruble filed proposed findings of fact and conclusions of law (Filing No. 38), but did not file a trial brief. On December 5, 2005, at the conclusion of Sheila Ruble's case-in-chief, State Farm, Jeffrey Ruble and Timothy Ruble made oral motions for judgment as a matter of law, which this court took under advisement. **See** Filing No. 43 (court minutes). On December 5, 2005, at the conclusion of the trial, the matter was deemed submitted.

## FINDINGS OF FACT

Based on the evidence presented and pursuant to Fed. R. Civ. P. 52(a), the court makes the following findings of fact:

On August 19, 1994, State Farm issued a life insurance policy, policy number LF-1366-9915, to Kirt Ruble making Jeffrey Ruble and Timothy Ruble primary beneficiaries. Kirt Ruble was the father of Jeffrey and Timothy Ruble. The initial application is dated July 18, 1994 (Exhibit 1). The application shows the name "Timmothy Kyle Ruble" listed in the successor beneficiary area. However, the second "m" in Timothy is crossed out and the entire name has a line through it, but the word "none" appears. The word "equally" and the

names "Jeffery [sic] Paul Ruble" and "Timothy Kyle Ruble" are written in the primary beneficiary area (Exhibit 1, p. 22 ¶ 10).

In January 1995, Kirt Ruble was in the process of changing jobs from a position in Texas, to a position in Morocco. On January 4, 1995, Kirt Ruble submitted a change of beneficiary form for the policy making Sheila Ruble the primary beneficiary (Exhibit 293). Sheila Ruble was Kirt Ruble's wife, but not the mother of Jeffrey and Timothy Ruble. The change of beneficiary form listed Kim Hekele, Kirt Ruble's sister, as successor beneficiary (Exhibit 293). On January 5, 1995, Kirt Ruble signed a notarized document which states, "I, Wayne Kirtley Ruble would like the insurance settlement designated for my sons to be divided equally. I would like this money to be used solely for my sons['] college education, specifically tuition and books only." (Exhibit 2). The January 5, 1995 document describes Kirt Ruble's specific wishes for the disbursement of the proceeds, referring to "Tim and Jeff." Additionally, the January 5, 1995 document states "I expect the beneficiary (Sheila Ruble\Kim Ruble) of this policy to deduct any expenses necessary in the disbursements of these funds." (Exhibit 2, ¶ 5). On January 7, 1995, Kirt Ruble left the United States for Morocco. State Farm processed the change of beneficiary form by January 20, 1995 (Exhibit 292).

Kirt Ruble applied to add a $100,000 accidental death rider to the policy and such Rider was added to the policy (Exhibit 290). The Rider is signed by Kirt Ruble and dated February 14, 1995, although Sheila Ruble contends the application was completed in January 1995. There is some dispute between the parties about when Kirt Ruble returned to the United States. Sheila Ruble contends Kirt Ruble returned toward the end of the month of February, while the other parties argue it was on February 7, 1995, or in any event before February 14, 1995. Kirt Ruble returned to the United States after terminating his employment in Morocco and he was unemployed.

State Farm received the application for the Rider on February 23, 1995 (Exhibit 290). The application for the Rider lists Jeffrey Ruble as the primary beneficiary and Timothy Ruble as the successor beneficiary, each name spelled correctly, in the Beneficiary Designation section (Exhibit 290). Line item 10, the Beneficiary Designation section states: "Completion of this section will replace all previous rider and policy designations for this

policy. If a Change of Plan, this will replace previous designations." State Farm did not enter a change to the beneficiary based on the Rider application for LF-1366-9915 into the computer. Therefore, all subsequent notices sent to Kirt and Sheila Ruble about the policy noted Sheila Ruble was the primary beneficiary (**see**, e.g., Exhibits 11-13). The Rider application lists Kirt Ruble as "unemployed between jobs" (Exhibit 1, p. 26 at 2(d)). Additionally, for the question "Do you plan to leave or travel from the United States or Canada in the next 12 months?" there is a check in the "no" box (Exhibit 1, p. 27 at 14(e)). The Rider became effective February 19, 1995 (Exhibit 282).

After processing the Rider, the entire policy was sent to Kirt Ruble (Exhibit 1). The policy is twenty-eight pages bound by three staples at the top. The front page of the policy notes the insured's "30-Day Right to Examine the Policy" and states "Read this policy with care. This is a legal contract between the Owner and State Farm Life Insurance Company." The policy contains a photocopy of the July 18, 1994 initial life insurance application. The policy also contains the original "2nd copy" carbon copy of the February 14, 1995 application.

On December 4, 2003, Kirt Ruble was killed in an automobile accident. Policy LF-1366-9915 was in full force and effect at the time of Kirt Ruble's death. Sheila Ruble and Jeffrey Ruble made due and timely application to State Farm for payment of the proceeds from policy number LF-1366-9915. Jeffrey Ruble designated that he wishes to share equally with Timothy Ruble any policy proceeds from policy LF-1366-9915 that he is entitled to receive.

## CONCLUSIONS OF LAW

**A.     Breach of Contract**

Nebraska contract law governs this diversity action. Under Nebraska law, the interpretation, construction and effect of a contract are determined as a matter of law unless the contract is ambiguous. ***Guerrier v. Mid-Century Ins. Co.***, 663 N.W.2d 131, 135 (Neb. 2003). An insurance policy is a contract. ***McGinn v. State Farm Mut. Auto. Ins. Co.***, 689 N.W.2d 802, 806 (Neb. 2004). In this case, Sheila Ruble contends the contract is ambiguous because Kirt Ruble could not have signed the Rider application on February

14, 1995. Sheila Ruble argues the wrong date and other alleged mistakes or delays caused by State Farm renders the insurance contract ambiguous, or a misstatement of Kirt Ruble's intent. Therefore, Sheila Ruble urges the court to use extrinsic evidence to determine Kirt Ruble's intent and to designate Sheila Ruble as the primary beneficiary of policy LF-1366-9915.

The determination of whether a contract is ambiguous is a question of law, but the interpretation of an ambiguous contract is a question of fact. ***Plambeck v. Union Pac. R.R. Co.***, 509 N.W.2d 17, 20 (Neb. 1993). "A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings." ***Guerrier***, 663 N.W.2d at 135. "The fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous." ***Big River Constr. Co. v. L & H Props., Inc.***, 681 N.W.2d 751, 756 (Neb. 2004). The court has a duty to "fastidiously guard against the invitation to create ambiguities where none exist." ***Edgley v. Lappe***, 342 F.3d 884, 888 (8th Cir. 2003).

If a contract is unambiguous, the contract language must be given its "plain and ordinary meaning as the ordinary or reasonable person would understand them." ***Guerrier***, 663 N.W.2d at 134. When interpreting the plain meaning of the terms of an insurance policy, Nebraska courts have stated "the natural and obvious meaning of the provisions in a policy is to be adopted in preference to a fanciful, curious, or hidden meaning. [And] that [w]hile for the purpose of judicial decision dictionary definitions often are not controlling, they are at least persuasive that meanings which they do not embrace are not common." ***Katskee v. Blue Cross/Blue Shield of Neb.***, 515 N.W.2d 645, 649 (Neb. 1994). A contract must be construed as a whole, and if possible, effect must be given to every part thereof. ***Big River***, 681 N.W.2d at 756. "While an ambiguous insurance policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe it against the preparer of the contract." ***Boutilier v. Lincoln Benefit Life Ins. Co.***, 681 N.W.2d 746, 750 (Neb. 2004).

There is no need, in this case, to look beyond the plain language of the contract. Although, Kirt Ruble changed the beneficiary for the policy to Sheila Ruble in January 1995,

the policy clearly lists the interveners as the beneficiaries as of February 1995. The Rider application also unambiguously states "Completion of this section will replace all previous <u>rider and policy designations for this policy</u>. If a Change of Plan, this will replace previous designations." **See** Exhibit 1, p. 26 at ¶ 10 (emphasis added). Kirt Ruble signed the Rider application and later received a carbon copy of the completed form. The court need not determine on which date the application was signed because the signature date does not create an ambiguity about the beneficiary of the insurance contract processed by State Farm in February 1995. Further, because the insurance contract is unambiguous, Kirt Ruble's intent on January 4 or 5, 1995, has no bearing on the later contract. The inaccurate information sent to the Rubles by State Farm does not alter the insurance contract. Kirt Ruble did not change the beneficiary designation for the life insurance policy after February 1995. Therefore, the court concludes the beneficiaries of policy LF-1366-9915 are Jeffrey Ruble and Timothy Ruble as written on the Rider application.

**B.    Negligence**

Sheila Ruble contends that State Farm is liable to her for an amount equal to the life insurance proceeds because of State Farm's negligent handling of Kirt Ruble's policy. Specifically, Sheila Ruble argues State Farm was negligent in the following respects:

> 1.    State Farm's agent failed to explain to Kirt Ruble that the Rider application would change the beneficiary designation of the policy and Rider.
> 2.    State Farm's agent failed to timely submit the Rider application and included inaccurate information on the application at a time when Kirt Ruble could not correct the application.
> 3.    State Farm's agent failed to notice the February 1995 beneficiary designation was not entered into the computer.
> 4.    State Farm failed to enter the February 1995 beneficiary designation into the computer so that future notices would alert Kirt Ruble to the beneficiary error.
> 5.    State Farm failed to notify Kirt Ruble that the beneficiaries of the policy were his sons, rather than his wife.

State Farm admits there was a clerical error failing to enter the change of beneficiary, but denies it is liable to Sheila Ruble for damages in excess of the policy

6

proceeds. First, State Farm argues Sheila Ruble does not have standing to allege claims against State Farm because she was neither a party to the contract, nor a beneficiary. Second, State Farm contends Sheila Ruble's only remedy lies in contract, rather than tort. Third, State Farm argues Sheila Ruble can maintain no cause of action against State Farm for ordinary negligence and in the absence of bad faith conduct. Fourth, State Farm contends it owed no duty to Sheila Ruble with respect to processing the beneficiary designation. Finally, State Farm states it is shielded from liability for amounts in excess of the policy limits because it paid the proceeds into the court registry.

### 1. Standing

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." **Warth v. Seldin**, 422 U.S. 490, 498 (1975). "There can be no doubt that, as the original named beneficiary in the policy, plaintiff has standing as a third party beneficiary to sue for breach of contract." **Milbourne v. Conseco Servs., LLC**, 181 F. Supp. 2d 466, 468-69 (D. Md. 2002); **see Goff v. Weeks**, 517 N.W.2d 387, 391 (Neb. 1994). Here, Sheila Ruble was named as beneficiary before the alleged mistaken change to Jeffrey Ruble. Accordingly, there is no dispute Sheila Ruble has standing to allege a breach of contract.

However, State Farm contends Sheila Ruble does not have standing to allege an action in negligence. Specifically, State Farm contends Sheila Ruble does not have standing because she was not a party to the contract, nor is she a beneficiary.

> [T]he irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an injury in fact-an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant, and not the result of independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted); **see** *Schanou v. Lancaster County Sch. Dist. No. 160*, 62 F.3d 1040, 1044 (8th Cir. 1995). In other words, "[t]o have standing, a plaintiff must allege an injury that is fairly traceable to the defendant's conduct, and the requested relief must be likely to redress the alleged injury." *Novartis Seeds, Inc. v. Monsanto Co.*, 190 F.3d 868, 871 (8th Cir. 1999).

Here, Sheila Ruble has standing. Sheila Ruble's argument is that State Farm's conduct (making errors with regard to the insurance policy) deprived her of the policy proceeds. Further, she alleges a finding of negligence entitles her to recovery of the proceeds from State Farm. Accordingly, apart from the merits of her claim, Sheila Ruble has standing to assert a negligence claim against State Farm.

### 2. Type of Action

State Farm contends that Sheila Ruble's only vehicle for suit against State Farm is a contract action. State Farm relies on *J.L. Healy Const. Co. v. Nebraska Dep't of Roads*, 463 N.W.2d 813 (Neb. 1990). In *J.L. Healy*, the Nebraska Supreme Court noted, "It is recognized that if an action is not maintainable without pleading and establishing the contract, if the gist of the action is the breach of the contract, either by malfeasance or nonfeasance, it is in substance, whatever may be the form of the pleading, an action on the contract." 463 N.W.2d at 816 (**quoting** *Fuchs v. Parsons Constr. Co.*, 88 N.W.2d 648, 652 (1958)). Further, State Farm argues "if there is a doubt as to the character of the action, it will be resolved in favor of an action on contract." *Cimino v. FirsTier Bank, N.A.*, 530 N.W.2d 606, 805 (Neb. 1995) (**citing** *Fuchs*, 88 N.W.2d at 648).

However, "Nebraska does not restrict contracting parties or their associates to breach of contract actions." *Oriental Trading Co., Inc. v. Firetti*, 236 F.3d 938, 944 (8th Cir. 2001) (**citing** *Streeks, Inc. v. Diamond Hill Farms, Inc.*, 605 N.W.2d 110 (2000); *Gibb v. Citicorp Mortgage, Inc.*, 518 N.W.2d 910 (1994) (where a purchaser of real estate infested by termites was able to sue for fraudulent misrepresentation, concealment, and negligence even though there was a contract)). In *Oriental Trading*, the Eighth Circuit held the plaintiff was not limited to a contract claim where it brought tort claims against third

8

parties with whom it was not in privity of contract. *Oriental Trading*, 236 F.3d at 944. A contract does not bar recovery in tort when the alleged tort is independent of the terms of the contract. **See** *id.*; **see also** *Braesch v. Union Ins. Co.*, 464 N.W.2d 769, 774-75 (Neb. 1991).

Sheila Ruble was not a party to the insurance contract. Additionally, while her negligence claims are related to the insurance contract, the complaint alleges claims independent of the terms of the contract. Therefore, Sheila Ruble will not be limited to a contract claim in this instance.

### 3. Ordinary Negligence

State Farm contends Sheila Ruble can neither rely on ordinary negligence nor show bad faith to maintain a claim against State Farm. State Farm cites *Weatherly v. Blue Cross Blue Shield Ins. Co.*, 513 N.W.2d 347 (Neb. App. 1994) in support of its position. Specifically, State Farm rests on Nebraska case law holding "something more than ordinary negligence must be pled in order to state a cause of action in tort for a first-party bad faith claim against an insurance company for failure of the company to extend coverage." *Id.* at 357. In *Weatherly*, and other Nebraska cases, the court adopts such holding under the premise that "[a] requirement of intentional or reckless conduct arises from the commonsense notion that '[t]he insurer . . . must be accorded wide latitude in its ability to investigate claims and to resist false or unfounded efforts to obtain funds not available under the contract of insurance.'" *Braesch*, 464 N.W.2d at 778 (internal citation omitted). The *Weatherly* court, and other cases named by State Farm, center on an insurance company's failure to settle a claim for insurance with either an insured or a third party against the insured. The claims by Sheila Ruble are wholly different. Sheila Ruble contends State Farm negligently performed its duties to Kirt and Sheila Ruble <u>before</u> the insurance claim arose. Further, Sheila Ruble does not allege bad faith. Accordingly, the cases cited by State Farm are inapplicable, as is State Farm's reliance on paying the insurance proceeds into the registry of the court as a shield for liability, to bar Sheila Ruble's negligence claims.

### 4.   Duty

"In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty." ***Washington v. Qwest Commc'ns Corp.***, 704 N.W.2d 542, 549 (Neb. 2005).  Under Nebraska law "while the existence of a duty and the identification of the applicable standard of care are questions of law, the ultimate determination of whether a party deviated from the standard of care and was therefore negligent is a question of fact." ***Cerny v. Cedar Bluffs Junior/Senior Public Sch.***, 628 N.W.2d 697, 704-05 (Neb. 2001); **see *Washington***, 704 N.W.2d at 549.

"The threshold issue in any negligence action is whether the defendant owes a legal duty to the plaintiff.  If there is no legal duty, there is no actionable negligence." ***Washington***, 704 N.W.2d at 549 (internal citation omitted).  Under Nebraska law, a court employs a risk-utility test to determining whether a duty exists.  Pursuant to this test, a court considers "(1) the magnitude of the risk, (2) the relationship of the parties, (3) the nature of the attendant risk, (4) the opportunity and ability to exercise care, (5) the foreseeability of the harm, and (6) the policy interest in the proposed solution." ***Moglia v. McNeil Co., Inc.***, 700 N.W.2d 608, 618 (Neb. 2005).

In consideration of each of the six factors and the facts of this case, Sheila Ruble failed to show State Farm owed her a legal duty.  Sheila Ruble alleges five specific breaches of duty. **See *supra***.  Sheila Ruble has no relationship with State Farm aside from her status as a previous beneficiary, or possible intended beneficiary, to a life insurance policy.  State Farm and its agent had the opportunity and ability to remedy any mistaken beneficiary or Rider application problem.  Also, it is foreseeable that a clerical error, hopefully a rare event, may result in the potential misdirection of life insurance proceeds.  However, the burden to remedy a mistake or clerical error does not rest solely on the insurer.  The insured, who signed the change of beneficiary/Rider application, is warned by State Farm to review the policy carefully.  An unambiguous policy, itself, is the insurance contract between the insured and the insurer.  The insured may change the beneficiary at any time. Accordingly, the court declines to extend and impose a legal duty on State Farm in favor of Sheila Ruble stemming from State Farm's failure to enter the February 1995

change of beneficiary into the computer system and State Farm's agent's alleged failures with regard to the February 1995 change of beneficiary in the Rider application.

Finally, Sheila Ruble alleges State Farm failed to notify Kirt Ruble that the beneficiaries of the policy were his sons, rather than his wife. Such allegation is factually wrong. Presumably Kirt Ruble read the Rider application before he signed it. However, if it were filled out and dated after Kirt Ruble signed the document. State Farm notified Kirt of its content by sending the original carbon copy to him in March of 1995. **See** Exhibit 1, p. 26-27; and Exhibit 282. In any event, the alleged duty to notify Kirt Ruble may be a duty owing to Kirt Ruble, rather than Sheila Ruble.

## CONCLUSION

The court concludes the beneficiaries of policy LF-1366-9915 are Jeffrey Ruble and Timothy Ruble as written on the Rider application and State Farm owed no duty to Sheila Ruble in relation to her allegations of negligence. Accordingly, judgment should be entered for Jeffrey Ruble and Timothy Ruble for the life insurance proceeds and against Sheila Ruble on her claims against State Farm.

**IT IS ORDERED:**

1. Judgment will be granted in a separate document for the intervenors Jeffrey Paul Ruble and Timothy Kyle Ruble and against the plaintiff Sheila Ruble; and for the defendant State Farm Insurance Company and against the plaintiff Sheila Ruble.

2. As for the evidentiary matters taken under advisement during trial, the objections are overruled. The court has considered the exhibits and testimony in question insofar as they are relevant to the issues determined in this Memorandum and Order.

3. The defendant's oral motion for judgment as a matter of law is denied.

4. The intervenors' oral motion for judgment as a matter of law is granted.

DATED this 2nd day of February, 2006.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge
